IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVO TRANSFORMA TECHNOLOGIES, LLC,<br><br>              Plaintiff;<br>v.<br><br>SPRINT SPECTRUM L.P., VIRGIN MOBILE USA L.P. and NEXTEL OPERATIONS, INC.,<br><br>              Defendants. | Civil Action No. 14-612-RGA |
| NOVO TRANSFORMA TECHNOLOGIES, LLC,<br><br>               Plaintiff;<br>v.<br><br>T-MOBILE US, INC.,<br><br>              Defendant. | Civil Action No. 14-613-RGA |
| NOVO TRANSFORMA TECHNOLOGIES, LLC,<br><br>               Plaintiff;<br>v.<br><br>TRACFONE WIRELESS, INC.,<br><br>              Defendant. | Civil Action No. 14-614-RGA |
| NOVO TRANSFORMA TECHNOLOGIES, LLC,<br><br>               Plaintiff;<br>v.<br><br>UNITED STATES CELLULAR CORPORATION,<br><br>              Defendant. | Civil Action No. 14-615-RGA |

NOVO TRANSFORMA TECHNOLOGIES, LLC,

Plaintiff;

v.

Civil Action No. 14-616-RGA

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,

Defendant.

# MEMORANDUM OPINION

Richard C. Weinblatt, Esq., Stamatios Stamoulis, Esq., STAMOULIS & WEINBLATT LLC, Wilmington, DE; Jonathan Baker, Esq., FARNEY DANIELS PC, San Mateo, CA.

Attorneys for Plaintiff Novo Transforma Technologies, LLC.

Jack B. Blumenfeld, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Christopher W. Kennerly, Esq., Lindsay M. White, Esq., PAUL HASTINGS LLP, Palo Alto, CA.

Attorneys for Defendant TracFone Wireless, Inc.

Karen Jacobs, Esq., Megan E. Dellinger, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; David E. Finkelson, Esq., Derek H. Swanson, Esq., MCGUIREWOODS LLP, Richmond, VA; Patrick A. Darno, Esq., MCGUIREWOODS LLP, Tysons Corner, VA; Jason W. Cook, Esq., MCGUIREWOODS LLP, Dallas, TX.

Attorneys for Defendants Sprint Spectrum L.P., Virgin Mobile USA L.P., and Nextel Operations, Inc.

Anne Shea Gaza, Esq., Samantha G. Wilson, Esq., YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Jared B. Bobrow, Esq., Anne M. Cappella, Esq., Andrew L. Perito, Esq., WEIL, GOTSHAL & MANGES LLP, Redwood Shores, CA.

Attorneys for Defendant T-Mobile US, Inc.

Katharine C. Lester, Esq., RICHARDS LAYTON & FINGER, PA, Wilmington, DE; Paul E. Veith, Esq., Douglas I. Lewis, Esq., Robert D. Leighton, Esq., SIDLEY AUSTIN LLP, Chicago, IL.

Attorneys for Defendant United States Cellular Corporation.

Collins J. Seitz, Jr., Esq., Benjamin J. Schladweiler, Esq., SEITZ ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Kevin P. Anderson, Esq., WILEY REIN LLP, Washington, DC.

Attorneys for Defendant Cellco Partnership d/b/a Verizon Wireless.

September 2, 2015

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is Defendants' motion for judgment on the pleadings of invalidity. (D.I. 40).[1] The matter has been fully briefed. (D.I. 41, 43 & 47). I also considered Plaintiff's supplemental briefing when deciding this motion. (D.I. 59-1). The Court held oral argument on June 18, 2015. (D.I. 60). For the reasons provided below, Defendants' motion for judgment on the pleadings of invalidity is granted.

I. BACKGROUND

Plaintiff filed the present action for patent infringement against Defendants on May 16, 2014, alleging infringement of U.S. Patent No. 5,826,034 ("the '034 patent"). (D.I. 1). Plaintiff asserts independent claims 23 and 36, and dependent claims 24, 31, 34, 35, and 37 of the '034 patent. Claim 23 is representative:

> 23. A payload delivery method for providing guaranteed end-to-end delivery of a payload from a sender to a recipient, said payload being delivered via one or more communication networks, comprising the steps of:
> generating a payload in a first media;
> defining payload delivery parameters by said sender;
> converting said payload to an alternative media at different locations as necessary for completion of delivery of said payload; and
> automatically [notifying] said sender upon receipt of said payload by said recipient.

(D.I. 1-1 at 18, col. 12:23–33). Claim 36 is almost identical to claim 23, but requires that "a portion" of the payload be converted in the converting step, and eliminates the requirement for conversion "at different locations." (Id. at 19, col. 13:7–14:6). The '034 patent has both system and method claims, but Plaintiff only asserts infringement of the method claims.

---

[1] For simplicity, all docket citations are to the docket in Civil Action No. 14-612.

1

Plaintiff submitted proposed claim constructions for four of the claim terms: (1) "media" as "format or protocol"; (2) "payload delivery parameters" as "elements that determine the characteristics or behavior of a payload delivery"; (3) "at different locations" as "controlling the location of conversion"; and (4) "administering media conversion" as "managing media conversion." (D.I. 55). For the purpose of this motion, Plaintiff's proposed claim constructions are adopted.

## II. LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make the determination. *See id.*

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS*

2

*Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (quotation marks and emphasis omitted). The Supreme Court has made clear that "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* for distinguishing "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular

3

technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (internal quotation marks omitted).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law . . . ." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

### III. DISCUSSION

Applying the two-step framework provided in *Alice*, I find that the claims of the '034 patent are drawn to patent-ineligible subject matter. The '034 patent claims the abstract idea of "translation." The claims do not solve a problem specific to the realm of computer networks, and the additional claim limitations do not amount to an "inventive concept." Therefore, the asserted claims of the '034 patent are invalid.

#### A. Abstract Idea

Defendants argue that the claims of the '034 patent are drawn to the abstract concept of "sending messages according to delivery instructions, converting the message if necessary, and notifying the sender upon receipt." (D.I. 41 at 17). During oral argument, Defendants described this concept more simply as "converting messages for delivery." (D.I. 60 at 14:22–15:9). Defendants argue that the claimed invention is an abstract concept that has been commercially practiced for many years. Defendants cite a Supreme Court case from 1918 that involved the practice of converting stock market quotations into Morse code, sending them via

4

telegram, translating them back into English, and transmitting them to stock market tickers. *See W. Union Tel. Co. v. Foster*, 247 U.S. 105, 112 (1918).[2] Defendants also provide a hypothetical scenario that they assert would perform all the steps of the claimed methods: A judge gives a message to her clerk to convey to another judge, the clerk calls the other judge and leaves a voice mail, the other judge's clerk transcribes the voice mail, gives the written transcription to the judge, and calls the first judge to notify her that the other judge has received the message.[3]

Plaintiff, on the other hand, argues that the claims of the '034 patent are directed to the "patent-eligible process for delivering messages from a sender to recipient over a communication network where the message is converted as necessary to an alternate format in order to enable delivery to a recipient that has a device that is not compatible with the format of the original message, and where an automatic notification is provided to the sender upon receipt of the message by the recipient." (D.I. 43 at 10–11). Plaintiff argues that the claimed invention is not directed to an abstract idea because it addresses a problem that "specifically arises in the context of communication networks due to the presence of incompatible devices and formats." (*Id.* at 12). The '034 specification explains that the claimed invention addresses the problem of "incompatibility between different communication services employing different media for communicating information." (D.I. 1-1 at 13, col. 1:63–64).

This problem, however, does not "specifically aris[e] in the realm of computer networks," and the solution is not "necessarily rooted in computer technology." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Incompatible

---

[2] Defendants also cite Western Union's trademark registration from 1979 for "Certified Mailgram," which described a "Service of Transmitting Messages for the General Public by Means of Telex or Other Facilities of Applicant to a Postal Station Near Its Destination, and from there Transmission of the Message by Postal Delivery, in the Same Manner as Mail Requiring a Signed Receipt as Proof of Delivery." (D.I. 41-1 at 12).
[3] I am not sure the last step happens "automatically."

5

communication types have existed since before the emergence of computers and the Internet. Translators have been used for centuries to facilitate communication between individuals who speak different languages. The translator receives a message in one language, translates it into another, and delivers the translated message. Here, the claims require a computer system that receives a payload in one media form, translates it into a different media form, and delivers the translated payload. This is no different than the function of a translator.

I recently addressed a similar technology to the one in question in *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, 2015 WL 1744343 (D. Del. Apr. 15, 2015). In *Messaging Gateway*, the claimed method was for "a computer system [that] receives an SMS text message, converts it to an Internet Protocol message, and delivers the converted message." *Id.* at *4. I found that the claimed invention was directed to the abstract idea of "translation." *Id.* Here, the claimed invention performs the same "translation" function. Thus, I find the claims of the '034 patent are directed to the abstract idea of "translation."

## B. Inventive Concept

Having found that the claims of the '034 patent are directed to an abstract idea, I must now determine whether the claims provide an inventive concept that renders the subject matter patent-eligible. Plaintiff argues that the claimed invention provides an inventive concept because "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257. Plaintiff contends that the claimed invention solves the problem of incompatibilities between different electronic communication formats.

Unlike *DDR Holdings*, however, the claimed invention does not solve a problem arising in the realm of computer networks. The '034 patent does not even require "payloads" to be

6

electronic communications. For example, the specification states, "For delivery to a postal address, the user specifies a specific carrier such as United States Postal Service, United Parcel Service (UPS), or Federal Express." (D.I. 1-1 at 16, col 8:41–44). Further, the specification states, "In the case of manual delivery, a sender is notified when the delivery is done, not when the carrier receives the e-mail or fax." (*Id.* at 17, col. 9:49–51). Thus, the claims do not solve a problem unique to or rooted in computer technology. Rather, the claims solve a problem common to all types of communication, including standard mail.

In *DDR Holdings*, the Federal Circuit specifically noted that the claims did "not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings*, 773 F.3d at 1257. I relied on *DDR Holdings* in *Messaging Gateway*, finding that the claimed invention was "firmly rooted in technology and [was] addressed to a specific problem arising in the realm of mobile device-to-Internet communication. *Messaging Gateway*, 2015 WL 1744343, at *6. Unlike *DDR Holdings* and *Messaging Gateway*, the claims of the '034 patent are not firmly rooted in technology and do not address a problem arising in the realm of computer networks. The claims merely recite the pre-Internet practice of "translation" performed over the Internet. The specification even states, "The present invention provides for a system and method for end-to-end ubiquitous payload delivery that is essentially the electronic equivalent to registered mail." (D.I. 1-1 at 13, col. 2:8–11). Performing the translation function over the Internet is not an inventive concept.

The additional claim limitations do not amount to an inventive concept either. Claim 23 includes several additional limitations: (1) the sender defines the "payload delivery parameters"; (2) conversion of the payload takes place "at different locations as necessary"; and (3) the sender

7

is notified "automatically" upon receipt. (*Id.* at 18, col. 12:23–33). Plaintiff proposed the construction "controlling the location of conversion" for the term "at different locations." (D.I. 55). Plaintiff argues that "controlling the location of conversion" makes the '034 claims directed to a problem "unique to telecommunications between electronic devices." (D.I. 59-1 at 5). I disagree. As discussed above, the '034 patent contemplates the conversion and delivery of physical messages. Thus, the problem is not unique to electronic devices. Further, Defendants' hypothetical about judges talking to each other through their law clerks shows how one can convert a message at different locations without the help of a computer network. Thus, the "at different locations" element does not provide an inventive concept.

The remaining claim elements are nothing more than the addition of "well-understood, routine, conventional activit[ies]" that were "previously known to the industry." *See Alice*, 134 S. Ct. at 2359. There is nothing inventive about having the sender define the "payload delivery parameters" or having the system "automatically" notify the sender of receipt. As the Federal Circuit held in *Ultramercial*, these claim elements "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial*, 772 F.3d at 715. Thus, the asserted claims of the '034 patent, "considered both individually and as an ordered combination," do not "transform the nature of the claim into a patent-eligible application." *See Alice*, 134 S. Ct. at 2355 (internal quotation marks omitted). Therefore, the asserted claims of the '034 patent do not provide an inventive concept and are not directed to patent-eligible subject matter.

## IV. CONCLUSION

For the reasons provided above, Defendants' motion for judgment on the pleadings of invalidity is granted with respect to all of the asserted claims of the '034 patent. An appropriate order will be entered.